**IT IS ORDERED as set forth below:**

**Date: May 1, 2018**





_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 10-92243-WLH |
| | ) | |
| ALFONZA MCKEEVER, | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | JUDGE WENDY L. HAGENAU |
| | ) | |

**ORDER AUTHORIZING PAYMENT TO PILGRIM REO, LLC,
D.H. PACE COMPANY AND AUCTIONEER**

This matter came before the Court originally in connection with the Trustee's Motion for private sale of property located at 5361 Covington Highway, Decatur, Georgia ("Property") [Docket No. 427]. In this motion, the Trustee sought authority to sell the Property and to pay certain liens on the Property, including that held by Pilgrim REO, LLC ("Pilgrim") and D.H. Pace Company ("Pace"). The Court entered an order on December 20, 2017 [Docket No. 438] authorizing the sale of the Property but reserving the issue of payment to Pilgrim and Pace while authorizing payment of certain other liens. Thereafter, the Trustee filed a separate Motion to Pay Certain Secured Claims and To Pay an Administrative Claim [Docket No. 500] again seeking authority to pay Pilgrim and Pace, and also to pay $200 to Bullseye Auction and Appraisal, LLC.

1

The foregoing matters came before the Court for hearing, after notice, on April 16, 2018. William Russell Patterson appeared on behalf of the Trustee, and the Debtor appeared *pro se*. Counsel for Pilgrim also appeared. The Court heard testimony and received documentary evidence and allowed the parties through April 23, 2018 to file any additional documents or briefs. Pilgrim and the Debtor filed additional documents and pleadings. Having reviewed all of the foregoing, the Court hereby authorizes the payments requested by the Trustee.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 which permits bankruptcy judges to "hear and determine all cases under title 11 and all core proceedings under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). Core proceedings are defined to include the "(B) allowance or disallowance of claims, (K) determinations of the validity, extent or priority of liens, (M) orders approving the use or lease of property, (N) orders approving the sale of property, and (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor … relationship.".

The Debtor contended at the hearing that the Court had no "subject matter jurisdiction" to address claims involving land. The Debtor contended that only a "land court" could deal with claims secured by land. The Debtor is in error. When a debtor files a bankruptcy case, a bankruptcy estate is created which is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). It is referred to as "property of the estate". Here, the Debtor's interest in the Property became property of the estate. The Bankruptcy Code then permits a trustee to use, sell or lease property of the estate, which includes the Property. 11 U.S.C. § 363(b)(1). Moreover, a bankruptcy trustee is directed to "collect and reduce to money the property of the estate for which such trustee serves." 11 U.S.C. § 704(a)(1). Finally, the trustee is required to distribute property of the estate in accordance with the priorities

2

set forth in 11 U.S.C. § 726. This Court therefore has subject matter jurisdiction over all property of the estate, which includes the Property, to supervise its reduction to dollars and the distribution of those funds to the appropriate claim holders.

## CLAIMS

The Debtor argues the Pilgrim and Pace liens should not be paid.

### *Pace*

Pace did not file a proof of claim in this case. Nevertheless, when the Trustee searched the title on the Property, the Trustee located a writ of *fieri facias* dated August 30, 2007 in the total amount of $1,526.14. The *fi fa* identifies Alfonza McKeever as the defendant and the Property address as the defendant's address. The *fi fa* is not marked as satisfied. The Trustee represented that she verified with Pace that the amounts remain outstanding. The Debtor contends that no sums are owed to Pace but has provided no evidence on which the Court could make such a decision. The Court therefore finds that the lien of Pace on the Property is properly to be paid from the proceeds of the sale.

### *Pilgrim*

Cranberry Financial, LLC ("Cranberry") filed Proof of Claim 5-1 on March 14, 2011. The claim has been transferred of record to Pilgrim. The Bankruptcy Code permits any person or entity to file a proof of claim in a bankruptcy case. 11 U.S.C. § 501. Such claim is "deemed allowed" unless an objection to it is sustained by the court. 11 U.S.C. § 502(a). A proof of claim which is filed in accordance with Fed. R. Bank. P. 3001 constitutes *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). Only a "party in interest" can object to a claim. 11 U.S.C. § 502(a). Generally, in a Chapter 7 bankruptcy case, the Chapter 7 trustee is the proper party to review and object to proofs of claim and typically no other person can file such an objection. In re Mohr, 538 B.R. 882, 885 (Bankr. S.D. Ga. 2015); see Trauner v. Huffman (In re

3

Trusted Net Media Holdings, LLC), 334 B.R. 470, 475 (Bankr. N.D. Ga. 2005). "Typically a Debtor has no standing to object to claims or orders relating to them because the debtor does not have a pecuniary interest in the distribution of the assets of the estate. This is because an objection to a proposed distribution only affects how much each creditor will receive and does not affect the debtor's rights." Kieffer v. Riske (In re Kieffer-Mickes Inc.), 226 B.R. 204, 208-09 (B.A.P. 8th Cir. 1998). If there is a reasonable possibility, however, that the result of a claim objection will be a surplus returned to the debtor, the debtor may have a pecuniary interest sufficient to allow it to participate in a claim objection. See In re Walker, 356 B.R. 834, 848 (Bankr. S.D. Fla. 2006); In re Stanley, 114 B.R. 777, 778 (Bankr. M.D. Fla. 1990).

Here, the Debtor contends that if the claim of Pilgrim is eliminated, he will be the beneficiary of the funds and therefore has standing to object to the claim. The Court has not undertaken any analysis of this contention, but, given the Debtor's *pro se* status, has heard the Debtor's arguments regarding the propriety of payment to Pilgrim. Nothing in this Order should be construed, though, as any determination that the Debtor could be entitled to a surplus under any particular circumstances.

Cranberry's claim was for principal and interest of over $91,800 and asserted a total amount due with late fees and attorney's fees of $123,348.24. Attached to the Proof of Claim is a summary of the amounts owed as well as a copy of the Note executed by the Debtor on January 30, 1995 and the deed to secure debt ("Security Deed") executed by the Debtor on January 30, 1995. Also attached are documents evidencing the assignment of the Note and Security Deed from the original payee, NationsBank of Georgia, N.A. to Capital Crossing Bank in April and May 2006, and then from Lehman Brothers Bank, FSB, successor by merger with Capital Crossing Bank, to Cranberry as of September 19, 2008. The Debtor verbally objected to the Cranberry claim throughout the course of the bankruptcy case.

4

On October 30, 2013, the Trustee filed a formal objection to the claim of Cranberry and retained Jeff Kerr as a forensic accountant to advise the Trustee on the amount of Cranberry's claim. The Debtor provided numerous documents to Mr. Kerr. Before the objection was heard, however, the Trustee and Cranberry reached a settlement and filed a joint motion to approve compromise on December 12, 2013 [Docket No. 236]. On February 18, 2014, the Court held an evidentiary hearing on the joint motion to approve the compromise between the Trustee and Cranberry. At that hearing, the Debtor testified, as did the Trustee and Mr. Kerr. Mr. Kerr also filed a written report regarding the Cranberry claim on February 6, 2014 [Docket No. 246].

The Debtor contended at the hearing on the motion to compromise that he owed Cranberry significantly less than Cranberry claimed. He provided information regarding payments made that he contended were not properly credited and testified he had retained his own forensic accountant to investigate the payments. The Debtor in his testimony opined that the amount of principal and interest owed should be $9,000, but he acknowledged parties could differ in their interpretations and that something in the $30,000 range was probably fair. Mr. Kerr testified he reviewed the Debtor's records and the analysis prepared by his forensic accountant. He agreed with some of the Debtor's contentions and disagreed with others. Mr. Kerr concluded that Cranberry claimed at least $12,977 more than what was owed and he agreed the Debtor had made some post-petition payments. He opined that the range of principal and interest owed to Cranberry as of this time in 2014 was between $30,000 and $55,000.

At the conclusion of the hearing, the Court approved the settlement. The Court explained to the Debtor in its oral ruling on February 18, 2014 that the hearing to approve the compromise was not the same as a hearing on the objection to the claim where the Court makes a final determination of the parties' contentions regarding amounts due. Instead, the purpose of the settlement was to allow Cranberry's claim in a reasonable amount given the differences of opinion

5

between the Debtor, Cranberry and the Trustee's accountant. Evaluation of the settlement also required the Court to take into consideration the time and expense that would be required to reach such a final allowable amount. The Court noted that looking at an appropriate settlement number was an imprecise science, but the Court evaluated the probability of success in the litigation, the complexity of the litigation, and the inconvenience and delay necessary in litigating the matter.

The Court noted that in addition to the difference between the principal amount owed as argued by the Debtor and Cranberry, there was a significant difference of opinion on the question of the collection of attorney's fees. Cranberry alleged that as of January 18, 2013, it was owed attorney's fees and expenses of at least $56,401.53. [Docket No. 108]. The Court noted that the range of allowable attorney's fees could be from $10,000 to $15,000 on the low end to well over $56,000 on the high end. After considering all of the evidence and the range of possibilities, the Court entered an order on February 25, 2014 [Docket No. 248] authorizing the settlement proposed by the Trustee ("Settlement Order"). As a result, Cranberry was allowed a secured claim of $85,000, accruing interest at the rate set forth in the Note executed by the Debtor from December 12, 2013 until paid in full. The Trustee released any and all claims which the estate had or may have against Cranberry and Cranberry released any other claims it may have in the case. The Debtor appealed the Settlement Order, but his appeal was dismissed on June 13, 2014 [Docket No. 276].

*<u>Reconsideration</u>*

As the Court explained to the Debtor at the hearing on April 16, 2018, its Settlement Order allowing Cranberry's claim in the amount of $85,000 plus interest is a final order. Therefore, the Debtor's objection to payment of Cranberry from the proceeds of sale is effectively a request by the Debtor to reconsider the Court's prior decision. Such a request is governed by Fed. R. Bankr. P. 9024 which largely incorporates Fed. R. Civ. P. 60. Under Rule 60(b),

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Nevertheless, a motion under Rule 60(b) must be made within one (1) year of the judgment or order with respect to bases (1), (2) and (3) and otherwise must be made "within a reasonable time". Fed. R. Civ. P. 60(c). The Debtor filed no motion to reconsider within a year of the Settlement Order.

Putting aside the question of whether the Debtor's request to reconsider the Settlement Order is made within a reasonable time, the Debtor has not established a basis under Rule 60(b)(4), (5) or (6) for setting aside the Settlement Order. First, the Settlement Order is not void. "A judgment is not void . . . simply because it is or may have been erroneous. . . . . Instead, Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 270 (2010) (cites omitted). The Settlement Order is not based on any jurisdictional error as the Court had jurisdiction under 28 U.S.C. § 157. The Debtor was not deprived of due process and fully participated in the hearing to determine whether approval of the settlement would be granted. Thus, the judgment is not void.

No basis exists for setting aside the Settlement Order under Rule 60(b)(5). Most often, Rule 60(b)(5) arises in the context of "institutional reform litigation" or prospective injunctions where the prospective actions are "reviewed for inequitable application because of changed circumstances." Lee v. Marvel Enterps, Inc., 765 F.Supp. 2d 440, 451 (S.D. N.Y. 2011). Here, the Settlement Order has not been satisfied, released or discharged. It was not based on any earlier

judgment that has been reversed or vacated. Applying it prospectively is exactly the circumstance under which the Court decided to approve the settlement with Cranberry, i.e., to facilitate the sale of the Property and the distribution of proceeds to creditors secured thereby.

Finally, the Debtor has not articulated any basis that justifies relief under Rule 60(b)(6). This section affords the Court some discretion to address issues raised by the parties that necessitate the setting aside of a prior order or judgment. However, it is not meant to supersede the requirements of Rule 60(b)(1) through (5). In other words, it is not meant to avoid the one-year limitation on a challenge under Rule 60(b)(1) through (3), or to change the standards for what constitutes a void judgment under Rule 60(b)(4) or to provide relief from a prospective judgment under Rule 60(b)(5). Gulf Coast Bldg. & Supply Co. v. Int'l Bhd. of Elec. Workers, 460 F.2d 105, 108 (5th Cir. 1972); see also Sneed v. Pan American Hosp., 435 Fed. Appx. 839, 841 (11th Cir. 2011). Moreover, relief under Rule 60(b)(6) "is extraordinary and may only be granted in exceptional circumstances." Davis v. Kan. Dept. of Corr., 507 F.3d 1246, 1248 (10th Cir. 2007).

Another basis (which the Debtor did not articulate) for setting aside a prior order exists under Rule 60(d) which provides, "This rule does not limit a court's power to: . . . . (3) set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3). "Fraud upon the court [under Rule 60(d)] requires that there was a material subversion of the legal process such as could not have been exposed within the one-year window…" Apotex Corp. v. Merck & Co., 507 F.3d 1357, 1360 (Fed. Cir. 2007). "Where complainant's own negligence or oversight, however innocent, contributed to the original judgment, an independent action for relief is not proper." In re Apex Int'l. Mgmt. Servs., 215 B.R. 245, 249 (Bankr. M.D. Fla. 1997). Further, "[t]o prove fraud on the court, the movant must establish that the officer of the court's misrepresentation or nondisclosure was *material* to the court's judgment." Shaffer v. City Nat'l Bank (In re NWFX, Inc.), 384 B.R.

8

214, 220 (Bankr. W.D. Ark. 2008). No evidence was presented that any party committed fraud on the Court. The Debtor simply disagrees (vehemently) with the accounting as to the amounts due.

The Court notes that Fed. R. Bankr. P. 9024 states that a motion for the reconsideration of an order allowing or disallowing a claim against the estate <u>entered without a contest</u> is not subject to the one-year limitation prescribed in Rule 60(c). The motion to compromise between the Trustee and Cranberry was subject to contest as the Debtor objected to it, and the Court heard evidence from the Debtor as to why the settlement should not be granted. Thus, the one-year limitation period remains effective as to the Settlement Order allowing a claim.

Lastly, the Debtor did not raise 11 U.S.C. § 502(j) as a basis for reviewing the Settlement Order, but the Court will address it in any event. Under 11 U.S.C. § 502(j), "[a] claim that has been allowed or disallowed may be reconsidered for cause." 11 U.S.C. § 502(j). The Bankruptcy Code does not define cause. "Several courts have equated a § 502(j) motion for reconsideration with a motion for relief from judgment under Federal Rule of Bankruptcy Procedure 9024," <u>In re Gomez</u>, 250 B.R. 397, 400 (Bankr. M.D. Fla. 1999), which would bar reconsideration of a claim allowed after contest. But even if the Cranberry claim was not actually litigated and more lenient standards were applied under Section 502(j), the Debtor would still not prevail. The factors that have been held relevant to reconsidering an allowed claim are "(1) the extent and reasonableness of the delay [in seeking reconsideration], (2) the prejudice to any party in interest, (3) the effect on efficient court administration, and (4) the moving party's good faith." <u>Id.</u> at 401.

Here, the delay in seeking reconsideration of the allowed claim has been lengthy and unreasonable. The Trustee filed the claim objection in 2013, and the Court ruled on the propriety of the settlement in February of 2014. It is now April of 2018. No reason exists for any delay by the Debtor in seeking to have the order set aside. Setting aside the Settlement Order would be extremely prejudicial to the Trustee and to Cranberry. After Cranberry's claim was fixed,

9

Cranberry attempted to mitigate expenses by minimal participation in the bankruptcy case. Moreover, the Trustee proceeded with efforts to sell the Property, understanding the amount of the claim that would need to be paid from the Property. Moreover, the efficient administration of this Court would be severely harmed by allowing a debtor who participated in the first instance in the hearing whereby the claim was allowed to wait four years to seek to have that order set aside, particularly where there is no new evidence and no information or no arguments raised by the Debtor that could not have been raised in 2014 when the settlement was considered. The Debtor is not proceeding in good faith with respect to this motion. For these reasons, the Court finds no cause for reconsidering the allowance of the Cranberry claim under 11 U.S.C. § 502(j).

*Debtor's Arguments*

Finally, the Court will attempt to touch on the many arguments the Debtor made as to why Pilgrim's claim should not be allowed. He argues first that Pilgrim did not present evidence at the hearing on April 16 and has therefore defaulted. The Debtor is in error. The motions before the Court were to pay the allowed claim. There was no need for evidence from Pilgrim.

Next, the Debtor alleges that Pilgrim is not a holder of the Note. Pilgrim has amended the Cranberry claim to provide copies of the assignment of the Note and Security Deed to it such that the Court finds Pilgrim is the holder of the Note. The Debtor's opposition seems to be based in large part on a theory that the Note had been sold as part of a securitization process. He objected to a pooling and servicing agreement and argued that his Note was in fact a security subject to Article 8 of the UCC. The Debtor is simply wrong. There is no evidence that this Note was securitized or that it is a security. This is simply a matter under Article 3 of the UCC where a negotiable instrument was transferred from one party to another and then to another. The Debtor also argues Pilgrim is not a holder in due course and the original lender defaulted because the Debtor's payments were not properly applied. The Court need not decide these questions. Even

10

if Pilgrim is not a holder in due course, that would mean it was subject to defenses on the Note. See O.C.G.A. § 11-3-302. The Court evaluated defenses to the Note, including the application of payments, when it approved the settlement between the Trustee and Cranberry.

The Debtor next argues the Note is a security under 15 U.S.C. § 78c. This section is part of the Securities and Exchange Act of 1934. Section (a)(10) thereof defines security to include "any note", but the definition of security does not include "any note … which has a maturity at the time of issuance of not exceeding nine months." 15 U.S.C. § 78c. The Debtor contends that because the Note had a 20 year and three month maturity, it is a security under the Security and Exchange Act of 1934. The Debtor misunderstands this definition.

> When Congress enacted the securities laws, it
>
> recognized the virtually limitless scope of human ingenuity, especially in the creation of "countless and variable schemes devised by those who seek the use of the money of others on the promise of profits," . . . and determined that the best way to achieve its goal of protecting investors was "to define 'the term "security" in sufficiently broad and general terms so as to include within that definition the many types of instruments that in our commercial world fall within the ordinary concept of a security.'"

Reves v. Ernst & Young, 494 U.S. 56, 61 (1990) (cites omitted). The Supreme Court has recognized that the term note "encompasses instruments with widely varying characteristics, depending on whether issued in a consumer context, as commercial paper, or in some other context." Id. at 62 (cites omitted). "The phrase 'any note,' should not be interpreted to mean literally 'any note', but must be understood against the backdrop of what Congress was attempting to accomplish in enacting the Securities Acts." Id. at 63. The courts commonly exclude from the definition of "note", as a security, a note delivered in consumer financing, notes secured by mortgages on a home, notes secured by liens on a small business or some of its assets, and notes evidencing open-account debt incurred in the ordinary course of business. See Id. The Supreme

11

Court held that courts should consider several factors to determine if a note is a security: First, the court should

> examine the transaction to assess the motivations that would prompt a reasonable seller and buyer to enter into it. If the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate, the instrument is likely to be a 'security.' If the note is exchanged to facilitate the purchase and sale of a minor asset or consumer good, to correct for the seller's cash-flow difficulties, or to advance some other commercial or consumer purpose, on the other hand, the note is less sensibly described as a "security."

Id. at 66. Next, the court looks at the "plan of distribution" to see if the instrument is one "in which there is 'common trading for speculation or investment.'" Id. at 66 (cites omitted). Then, the court looks at "the reasonable expectations of the investing public". Id. In this factor, the court is looking to see whether the public would generally view such an instrument as a security. Finally, the court looks at whether another regulatory scheme applies to the instrument such that application of the Securities Acts is unnecessary. Id.

This analysis has led courts to routinely differentiate between transactions where money is loaned by lending institutions or other private lenders in arm's length transactions, and those where money is invested by the public. Generally, when a loan is made by a bank or other commercial lending institution for the purpose of the borrower acquiring, expanding or continuing the operation of a business, the transaction is viewed as an ordinary commercial loan, rather than an investment. Such was the case in Bellah v. First Nat'l Bank of Hereford, 495 F.2d 1109 (5th Cir. 1974). There, the court noted that the note and deed of trust executed by the Bellahs was merely commercial paper and not an investment or a security. There was no evidence that the lender sought to profit from the successful operation of the enterprise, other than repayment of the loan. Id. at 1113.

Such is the case here. The Debtor simply borrowed $170,000 from NationsBank for the purpose of acquiring real property for his business. The terms of the loan are typical commercial

12

terms where interest is paid. The bank does not participate in any profits or have any other rights which suggest that it was investing in the Debtor's business. In a typical security transaction, the issuer of the note is seeking an investment in the business. Here, the "issuer" (if there is one) of the Note is Mr. McKeever himself. The request for a loan is not the same as requesting an investment in oneself or one's business. The loan is not a security under any of the securities laws.

The Debtor also sent a number of "validation requests" which he argues he is entitled to send pursuant to the Real Estate Settlement Procedures Act and other laws and that he is entitled to be presented with the original documents. None of the foregoing is relevant. The Debtor continually fails to grasp that the Cranberry claim is against the estate for which the Trustee is responsible, not him, and that the Trustee has evaluated this claim and found it to be valid. The only "validation" procedure required in the bankruptcy court is the filing and evaluation of proofs of claim.

The Debtor claims he did not receive notice of "tax credits", of "original issue discount", and of other items which are simply irrelevant to this case.

The Debtor also contends the procedure being followed by the Bankruptcy Court is a "clogging" procedure. Presumably, the Debtor is referring to the "clogging doctrine" which many courts follow to invalidate provisions in a mortgage or collateral documents which purport to prevent the mortgagor from exercising his right to redeem the collateral by paying the debt in full prior to foreclosure. See "Deeds in Escrow: Are They Enforceable" by John C. Murray, American Law Institute – American Bar Association CLE copyright 2010, American Law Institute, fn 1; see also Lewis Broadcasting Corp. v. Phoenix Broadcasting Partners, 232 Ga. App. 94 (1998) (a mortgagor cannot waive his right to redeem at the inception of the loan or take other actions at the inception of the transaction that defeat the borrower's equity of redemption). The clogging doctrine is not applicable here, however. First, the bankruptcy sale is not a foreclosure. Second,

13

no action in this Court has prohibited the Debtor from tendering the full amount that the Court has found due to Cranberry. In fact, the Court encouraged the Debtor on numerous occasions to find alternative financing to pay the $85,000 fixed amount to Cranberry in order to preserve the Property. The Debtor failed to do so.

Finally, the Debtor spent most of his time arguing again over the accounting issues to which he testified in 2014 and the report of his accountant which was also considered in 2014. As the Court explained, a settlement is in recognition of the disputes between the parties and not an attempt to rule definitively on either party's position. It was the Court's view in 2014 that the amount of the settlement was within the range of reasonably probable outcomes of the litigation which could have ranged from $42,000 to over $190,000. The allowance of the claim in the amount of $85,000 was appropriate under the circumstances and no basis exists for setting aside the Settlement Order. It is therefore

ORDERED that the Trustee may pay Pace $1,526.14; pay Pilgrim the principal sum of $85,000 plus interest as calculated on the Trustee's Exhibit 3 through the date of payment; and pay Bullseye Auction and Appraisal, LLC the sum of $200.

ORDERED FURTHER that all of the Debtor's objections are DENIED.

ORDERED FURTHER that because any claim held by the Debtor against Cranberry became property of the estate, and the Settlement Order approved the Trustee's release of any and all claims which the Debtor had against Cranberry which became property of the estate, the Debtor is prohibited from pursuing such claims.

### ### END OF ORDER ###

# DISTRIBUTION LIST

Cathy L. Scarver
P. O. Box 672587
Marietta, GA 30006

William Russell Patterson
Ragsdale Beals Seigler Patterson & Gray
2400 International Tower
229 Peachtree Street NE
Atlanta, GA 30303-1629

Alfonza McKeever, Jr.
4020 Berry Hill Trail
Stone Mountain, GA 30083

Alfonza McKeever, Jr.
c/o Joe Ann McKeever (power of attorney)
520 Aubrey Drive
Athens, GA 30622

Pilgrim REO, LLC
Attn:  Denis B. Stratford
c/o Capital Crossing Servicing Company LLC
100 Summer St., Suite 1150
Boston, MA 02110

Erich N. Durlacher
Kelly E. Waits
Burr & Forman LLP
171 Seventeenth St NW, Suite 1100
Atlanta, GA 30363

Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303